## AULTMAN v. UTSEY.

1. PURCHASE WITHOUT NOTICE—FACTS.—The plea of purchase for valuable consideration without notice is a question of fact, and the conclusions of fact reached by the Circuit Judge from a consideration of the testimony in this case not being without evidence to support it, or manifestly against the weight of evidence, must be sustained.

2. FRAUD—NOTICE.—Defendant had no personal knowledge or notice of fraud in a title which she purchased for value, but her agents actually or constructively knew the following facts: That P gave a mortgage of this land to C, which was never satisfied on the record; that P, while greatly embarrassed and only a short time before judgments were recovered against him, conveyed to C, retaining possession; that defendant's agent, regarding P as owner, proposed to purchase, but was referred to C, who offered to sell at a price agreed upon; that on coming to the meeting appointed by C, only P was present, who tendered a title deed from C to the wife of P, without warranty, on an alleged money consideration, and a deed of same date from Mrs. P to defendant for the consideration agreed upon, much less than that stated in C's deed; and defendant through her agent complied without inquiry. Meantime plaintiff had obtained judgment against P, and afterwards purchased at sheriff's sale thereunder. The transactions between P, C, and Mrs. P were all without consideration, and the mortgage to C had been paid before he took his deed. *Held,* that defendant was chargeable with notice of the fraud, the circumstances known to her agents having been sufficient to put her upon inquiry.

3. PURCHASER WITH NOTICE—QUIT-CLAIM DEED.—Where the immediate grantor of the purchaser holds under a quit claim deed, the purchaser is put upon the inquiry, and chargeable with notice of all facts which a well pursued inquiry would have disclosed.

4. FRAUD—NOTICE—INQUIRY.—It cannot be assumed that if inquiry had been made of C, he would not have disclosed the facts which prove the fraud

5. SUBSEQUENT INQUIRY—APPROVAL OF TITLES.—The subsequent approval of the title by defendant's attorney cannot relieve defendant from the consequences of her failure to make inquiry at the time of her purchase. Result alone concurred in.

Before IZLAR, J., Abbeville, June, 1890.

This was an action by C. Aultman & Co. against Mattie Utsey. The Circuit decree was as follows:

The case was heard before me upon the pleadings and testimo-

ny taken by the master under an order of reference for that purpose. Full argument was made by the counsel on either side. In reference to the pleadings, I will say in the outset that while the plea of purchaser for valuable consideration is not made specially and in the usual form, the issues raised are the same, and the answer is in effect a plea of purchaser for valuable consideration without notice, and in the consideration of the case I shall treat it as such.

The evidence tends to sustain most of the material allegations of the complaint. There is no dispute that the defendant paid three thousand two hundred and fifty dollars for the house and lot, reither is there any dispute as to the fact that the deed from F. M. Pope to G. W. Connor, as also the deed from G. W. Connor to Mrs. Elizabeth M. Pope, the wife of F. M. Pope, was voluntary, and made without consideration, and the following facts, namely, that the deed from F. M. Pope to G. W. Connor was made at a time when F. M. Pope was largely indebted to the plaintiffs and others, and with intent to delay, hinder, and defraud the creditors of F. M. Pope, and that there was no change in the possession of said property after said conveyance, and that the judgment of the plaintiffs is still unpaid and unsatisfied, are fully sustained by the testimony.

The following facts, however, are seriously contested, and must therefore be considered and determined upon the testimony submitted, and the law applicable thereto, namely, was the price paid by the defendant at the time of said purchase for premises inadequate; and did the defendant at the time of said purchase have actual or constructive notice of the fraud in the conveyance by F. M. Pope to G. W. Connor in the first instance, and of the subsequent fraud in the conveyance by G. W. Connor to Elizabeth M. Pope, the immediate grantor of the defendant? I am satisfied from the evidence that the defendant had no actual notice of the fraud in either case. I am equally satisfied that the purchase price paid by the defendant for said property was not, under the circumstances, inadequate. So the issue is narrowed down to the single question, whether or not the defendant had constructive notice of the fraud in the transfers of F. M. Pope to G. W. Connor and of G. W. Connor to Elizabeth M. Pope?

The answer to this question depends alone upon the fact whether the circumstances attending said transfers were sufficient to put the defendant or her agents upon the inquiry. The rule of law as to constructive notice is clearly and succinctly stated by our Supreme Court in the case of *Black* v. *Childs*, 14 S. C., 321. The court say: "If there are circumstances sufficient to put a party upon the inquiry, he is held to have notice of everything which that inquiry, properly conducted, would certainly disclose; but constructive notice goes no further. It stands upon the principle that the party is bound to the exercise of due diligence and is assumed to have the knowledge to which that diligence would lead him; but he is not held to have notice of matter which lies beyond the range of that inquiry and which that diligence might not disclose. 'There must appear to be, in the nature of the case, such a connection between the facts disclosed and the further facts to be discovered that the former could justly be viewed as furnishing a clue to the latter.' "

Now, what are the facts here? The defendant was desirous of purchasing a house and lot in the town of Ninety-Six, where she formerly lived. She was residing at St. George's, in the County of Colleton, in this State, with her husband, W. B. Utsey. One L. M. Moore, a resident of Ninety-Six, wrote to her husband that the Pope house and lot was for sale and could be bought for thirty-five hundred dollars. W. B. Utsey, as the agent of his wife, the defendant herein, wrote to Moore that defendant would pay three thousand dollars for the property, and if it could be bought for that price, to close the trade. Moore wrote to F. M. Pope at Greenville, where he had recently moved with his family, stating that Col. Utsey wanted to buy the property, and wanted to know the least cash price, and to answer by return mail. F. M. Pope replied to Moore by return mail, saying he had referred his letter to G. W. Connor; that the property was Connor's, and that he would have to negotiate with him. Moore wrote at once to Connor, stating that Pope said the property was his, and asking the least price that would buy it, and that if for sale to come down at once. Connor came to Ninety-Six on the next train. Moore met him. Connor offered the property for $3,500. Moore told him that Utsey's figures were

36—34

$3.000. Connor then proposed to split the difference and take $3,250. Moore told him he was not authorized to give it, but would notify the party at once, and if accepted would wire him. Moore communicated with Utsey. Utsey wrote Moore that he would take the property at $3,250, and to notify Connor. Moore notified Connor by telegraph. On October 26, 1887, Moore telegraphed Utsey that Connor had accepted his offer, and would be at Ninety-Six on Thursday with the papers.

Up to this point there was nothing to excite suspicion or suggest any fraud between any of the parties to the transaction. Everything appeared to be open, fair, and *bona fide*. And had the contract of purchase as concluded between Connor and Utsey been carried out in the regular way between Connor and Utsey, there would have been nothing in the circumstances to furnish knowledge of the fraud, or even a clue thereto—nothing sufficient to put the defendant or her agents upon the inquiry. But let us examine the circumstances surrounding the execution of the contract made between Connor and the defendant. On the 27th day of October, 1887, W. B. Utsey, as the agent of his wife, the defendant, goes to Ninety Six to meet Connor, who was to be there with the papers conveying said property to the defendant, in pursuance of the previous contract entered into as aforesaid between them. In the place of Connor, Pope appears. Instead of a tender of Connor's deed, the deed of Connor to Elizabeth M. Pope, wife of F. M. Pope, without warranty of any description, and the deed of Elizabeth M. Pope to the defendant were tendered. Pope consummates Connor's agreement to convey in his absence, and receives the purchase money, exhibiting no other authority from Connor save the deed to his, Pope's, wife, without warranty. No reason or explanation was given or made for the conduct of Connor in conveying through Elizabeth M. Pope and not directly. These deeds disclosed the fact that Elizabeth M. Pope was disposing of property to the defendant at a price fixed by Connor, and which was $1.750 less than the price purported to have been paid by Elizabeth M. Pope for the identical property on the morning of the same day. Besides these facts, the mortgage upon said property, executed by F. M. Pope to G. W. Connor for ten thousand dollars, and which had been duly recorded in

the register's office for said county, was then open and unsatisfied. Of this mortgage the defendant and her agent had constructive notice at least.

These facts, I am constrained to say, were, in my opinion, sufficient to put the defendant and her agents upon the inquiry. She and they were bound to the exercise of due diligence, and with the facts and circumstances here disclosed, they certainly failed to exercise it. These facts and circumstances were more than enough to arouse suspicion. They demanded investigation and explanation before complying with the agreement to purchase and paying over the purchase price. Had due diligence been exercised on this occasion, it would have led to the discovery of the fraud in the previous transaction between F. M. Pope and G. W. Connor. Connor testifies that Pope wanted him to make the transfer direct to Utsey, but that he declined. That he could not guarantee the title and would not do it. That if it had been his father, he would not have done it to protect him. Now, if inquiry had been made of Connor for an explanation of the peculiar and extraordinary circumstances attending the transfer of said property, it must have led up to the fact that the conveyance of F. M. Pope to G. W. Connor was purely voluntary and made in fraud of the existing creditors of F. M. Pope, and to the further fact that the mortgage of F. M. Pope to G. W. Connor had been fully paid and satisfied by the conveyance of other property, and not by the house and lot in question. A diligent inquiry would, I am persuaded, have led to a discovery of the fraud, and have disclosed the secret which had theretofore been kept by G. W. Connor. The defendant must therefore be presumed to have had knowledge of all the facts which a diligent inquiry would have disclosed. "In the very nature of the case" there was, in my opinion, "such a connection between the facts disclosed and the further facts to be discovered, that the former could justly be viewed as furnishing a clue to the latter."

I am therefore of opinion that the defendant is not a *bona fide* purchaser for value without notice of the fraud affecting the title to the property described in the complaint herein. The question whether the defendants exercised due diligence, cannot, in my opinion, be affected by the fact that counsel was employed to in-

vestigate the title after the agreement to convey had been execut-
ed by the delivery of the deeds and the payment of the purchase
price of the property. There is no testimony tending to show
that the counsel was in possession of the facts and circumstances
attending the making of the contract to purchase and its execu-
tion ; all counsel had was the chain of title, which appeared
regular.

It is a hard case, but the injury to the defendant, if any, arises
not from the application of the legal principles involved in this
investigation, but from a want of due diligence on the part of
those who acted in her behalf, and by whose acts she is bound.

It is therefore adjudged, that the following deeds, to wit, the
deed executed by F. M. Pope to G. W. Connor, bearing date the
seventh day of December, 1886, as also the deed executed by G.
W. Connor to Elizabeth M. Pope, bearing date the twenty-sixth
day of October, 1887, as also the deed executed by Elizabeth M.
Pope to the defendant, bearing date the 26th day of October,
1887, are fraudulent and void as against the creditors of said F.
M. Pope, and convey no interest in the premises mentioned and
described in the complaint to the grantors therein named ; and
that said deeds be delivered up to the plaintiff cancelled. It is
further adjudged, that the mortgage executed by F. M. Pope to G.
W. Connor, bearing date the first day of February, 1884, be sat-
isfied of record by the clerk of this court. It is further adjudged,
that the issues of title and of the right of possession to said pre-
mises be submitted to a jury, and that the case be placed upon
calendar No. 1 for that purpose. The question as to the im-
provements put upon said premises by the defendant not having
been made is reserved, as also the question of costs.

*Messrs. Benet & Cason,* for appellant.

*Messrs. Graydon & Graydon,* contra.

November 12, 1891. The opinion of the court was delivered
by

MR. JUSTICE McIVER. On the first day of February, 1884,
one F. M. Pope, being indebted at the time to plaintiffs and

others to a large amount, executed a mortgage on a house and lot in the town of Ninety Six, to one G. W. Connor, to secure the sum of ten thousand five hundred dollars, which Connor, in his testimony, says was intended to secure future advances, as well as the amount then really due. The amount really due on this mortgage ($5,045), Connor says was paid to him some time in the winter of 1884, though the mortgage was not cancelled, and still remains of record open and apparently unsatisfied. This payment was made by the sale to Connor of property other than that embraced in the mortgage. On the 7th of December, 1886, the house and lot above mentioned, which is the subject of this controversy, was conveyed by Pope to Connor by a deed, in which the consideration recited was the sum of $5,000, which deed seems to have been duly recorded, though the date of such record is not given.

Some time in 1887, probably towards the latter part of that year, L. M. Moore, the brother in-law of W. B. Utsey, who then resided in Ninety-Six, learning that Mrs. Utsey, the defendant herein, who then lived in Colleton County, desired to buy the house and lot in question, with a view to a return to Ninety-Six, where she had formerly resided; and being requested to see Pope, who was then supposed to be the owner of the property, and ascertain at what price the property could be bought, undertook the negotiation for the purchase. Accordingly Moore wrote to Pope, who had then recently removed to Greenville, asking the price of the property. Pope replied by the next mail, saying that the property belonged to Connor, and referring Moore to him. Thereupon Moore opened negotiations with Connor, which resulted in an agreement to sell for the sum of $3,250. W. B. Utsey, the husband of the defendant, being informed of this result, and being advised to go up on the following Thursday, which seems to have been the 26th of October, 1887, did so and there met Pope instead of Connor, who produced the papers showing the chain of title, amongst which were the deed from Pope to Connor above mentioned, and a deed without warranty from Connor to the wife of Pope, bearing date that day, in which the consideration recited was the sum of five thousand dollars, together with a deed bearing the same date signed by Mrs. Pope

to the defendant, in which the consideration recited was the price agreed upon, $3,250, and upon the delivery of these deeds to W. B. Utsey, he acting as the agent of his wife, settled with Pope by paying in cash $2,000 of the price and the balance in an accepted draft at sixty days. After the trade was thus consummated, Utsey delivered the papers to his attorney for an examination of the title, who pronounced it good.

In the meantime, however, to wit, on the 25th of February, 1887, the plaintiffs had recovered a judgment on their claim against said Pope, and under the execution issued to enforce that judgment, the said house and lot was levied on by the sheriff, and on the 2nd of September, 1889, the same were sold and bid off by the plaintiffs, who, having complied with the terms of the sale, received titles from the sheriff. Very soon thereafter this action was commenced, in which plaintiffs, under the allegations that the deed from Pope to Connor was without consideration and made with intent to hinder, delay, and defraud the creditors of Pope, and that the mortgage, if anything was ever due thereon, had been paid and satisfied, and that the deed from Connor to Mrs. Pope was also without consideration and made with like intent, demand judgment that the said deeds be declared fraudulent and void, and that the same, together with the mortgage, be cancelled, and also for the possession of the premises. The defendant in her answer denies all the material allegations in the complaint, and sets up in an informal manner the defence that she is a purchaser for valuable consideration without notice.

The case was heard by his honor, Judge Izlar, upon the pleadings, the testimony taken by the master, and the argument of counsel, who, having found as matter of fact that the deeds from Pope to Connor and from Connor to Mrs. Pope were not only without consideration, but made with intent to hinder, delay, and defraud the creditors of Pope, adjudged them fraudulent and void; and having found that the mortgage had in fact been satisfied, directed that the same be so declared on the record by the clerk. He held that the only real question in the case was whether the defendant had such notice as would defeat her plea as purchaser for valuable consideration without notice; and upon that he found that while she did not personally have such notice,

yet she did have constructive notice through her agents sufficient to put them upon the inquiry, which, if followed up properly, would have led to the discovery of the defect in the title which she purchased, and he therefore overruled that plea, and rendered judgment that the deeds be delivered up cancelled and the mortgage be marked satisfied, and directed that the issue of title and right of possession be referred to a jury for trial.

From this judgment defendant appeals upon the several grounds set out in the record, which raise substantially the single question whether there was error in holding that defendant had such notice as would defeat her plea of purchase for valuable consideration without notice. The plaintiffs also, in accordance with the proper practice, give notice that they propose to sustain the judgment below upon other grounds than those stated in the decree, which are likewise set out in the record. But as we are satisfied that the judgment must be sustained upon the grounds upon which it is based by the Circuit Judge, it will not be necessary for us to consider any of these additional grounds, some of which present important and very interesting questions upon which we would prefer to have the aid of the Circuit Judge's views, as well as further argument of counsel, before undertaking to decide them, especially as it is not necessary to the decision of this case to do so now.

We will therefore confine our attention to the question raised by counsel for the appellant, which is really more a question of fact than of law, and therefore, under the well settled rule, the conclusion reached by the court below should not be disturbed here, unless it is either without any evidence to sustain it, or is manifestly against the weight of the evidence. But it is urged by appellant that, inasmuch as the appeal here does not impute error in the finding of any particular fact, but that such error lies in drawing an unwarranted inference from undisputed facts, a question of law rather than of fact is presented. If it could be shown that the law lays down any particular rule or rules by which to determine what facts are or are not sufficient to put a person upon inquiry, then there would be much force in the position. But, so far as we are informed, no specific rules have been laid down by which to determine whether the

facts in a given case are or are not sufficient to put a party upon inquiry.

Indeed, we do not see how it would be possible to formulate any specific rule of general applicability, as it is manifest that each case must depend largely upon its particular circumstances. The most that can be done is to lay down some *general* rules upon the subject; and that has been done by Mr. Justice Mc-Gowan in *Black* v. *Childs* (14 S. C., 312), probably as well as the nature of the subject permits, in the quotation from that case made by the Circuit Judge in his decree. For while it is undoubtedly true that "there must appear to be, in the nature of the case, such a connection between the facts disclosed and the further facts to be discovered, that the former could justly be viewed as furnishing a clue to the latter," yet in every instance it will always be a question what is the nature of the case, and whether the facts disclosed can be regarded as furnishing a clue to the fact in question. This view may be illustrated by a case depending upon circumstantial evidence. While it is true that there are certain well established *general* rules in regard to the consideration of that kind of testimony, yet after all, it remains a question of fact whether, in a given case, the particular facts proved warrant the one or the other conclusion. For example, in the trial of a criminal case where circumstantial evidence is relied upon to show the guilt of the accused, and where no error is imputed to the judge in laying down the general rules to be observed in considering that kind of testimony, it is always a question of fact, exclusively for the jury, whether the circumstances relied upon and established are sufficient to produce in the minds of the jury a conviction of the guilt of the accused.

So in this case, where it does not appear that the Circuit Judge has violated or disregarded any of the general rules in respect to the subject under consideration; but, on the contrary, has expressly recognized and followed them, and the only error assigned is in applying them to the facts of the case, it seems to us that a question of fact only is presented. This view seems to have been adopted in *Richardson* v. *Chappell* (6 S. C., at page 157), where it is said: "On the question of notice, the conclusions of the Circuit Judge appear to conform to the evidence. There was

certainly evidence in the case from which a conclusion of fact could be drawn as to whether Simpkins had, at the time of purchasing, knowledge of the existence of plaintiff's claim.   *   *   *
The question of notice was properly before the Circuit Judge as a question of fact to be determined from the testimony before him.   There is no overbearing weight of evidence against his conclusions, such as would justify this court in setting them aside."   And again: "We are not required to say what force these circumstances should have on the mind of the Circuit Judge, for the duty of drawing such inferences rested primarily on him, and it is only where he acts in the face of and against the force of overbearing testimony that this court can properly disturb his conclusions."

It seems to us, therefore, that the question of whether defendant had such notice as would defeat her plea of purchase for valuable consideration without notice, was a question of fact, and that the conclusion reached by the Circuit Judge must, under the rule, be sustained, unless it is either without any evidence to sustain it, or is manifestly against the weight of the evidence, neither of which can be said in this case.

But in deference to the earnest and able efforts of counsel to relieve this unfortunate lady from a misfortune which has befallen her through no fault on her part, as it is entirely clear that there is not a shadow of reason for believing that she was guilty of any fraud herself, or connived at the fraud of others, or even had any *personal* knowledge that there had been any fraud committed, we are disposed to consider more fully the question than is usually done in cases where an appeal turns upon a question of fact; although it seems to us that the reasoning of the Circuit Judge in his decree, which we trust will be incorporated in the report of the case, is quite sufficient to vindicate the correctness of his conclusions.

While, as we have said, it is clear that the defendant had no *personal* knowledge of any fraud, or of any circumstances calculated to excite inquiry, yet, under the well settled doctrine that notice to the agent is notice to the principal, if her agents had notice, she must be affected thereby. The real question, therefore, is whether the agents of the defendants, one or both of them, had

notice of such facts and circumstances as were calculated to ex-
cite inquiry, which, if followed up with due diligence, would have
led to the discovery of the fraud, ; or, in other words, were the
facts and circumstances, of which they unquestionably had notice,
of such a character as would furnish a clue which, if followed up
with due diligence, would have led to the discovery of the fraud.

In the first place, both of these agents certainly had *construc-
tive* notice of the mortgage, which was spread upon the record,
apparently unsatisfied, and one of them, Moore, who had con-
ducted the negotiations up to the day when Utsey appeared for
the purpose of consummating the trade, says he had *actual* knowl-
edge of the mortgage, and when he learned that Pope had con-
veyed the property in question to Connor, he assumed, without
any inquiry whatever, that such conveyance had been made in
satisfaction of the mortgage, which turns out not to have been
the fact.   Again, when Moore learned that the property had
been conveyed to Connor some time before, he at the same time
knew that Pope had retained possession as long as he remained
in Ninety-Six, up to a very short time before the sale to defend-
ant, and this of itself was a circumstance well calculated to ex-
cite inquiry, especially in view of the fact that Moore still regard-
ed Pope as the owner, as shown by his attempt to buy from him,
as well as by his own direct testimony to that effect.   Indeed,
the remark made by Moore to Pope after the sale had been con-
summated—that he ought to pay him one hundred dollars for
making the sale—would seem to indicate that Moore still regard-
ed Pope as the real owner, even after he had learned of the con-
veyance to Connor, and Pope's reply to that remark was not cal-
culated to remove that impression, for he did not say that the
property was not his, but said "the trouble of it was he didn't
get the money," but did not say who got it.   Moore also knew
that Pope was embarrassed at the time, to some extent at least,
and knew of the pendency of the action by plaintiffs against
Pope, in which the judgment was recovered, under which the
property was subsequently sold.

Then when Utsey appeared as the agent of defendant to con-
summate the trade which Moore had negotiated with Connor, he
certainly had constructive notice of the mortgage.  Common pru-

dence required that he should examine the records of the county where the property which he proposed to purchase was located, and if he had done so, he would have discovered, not only that there was a mortgage upon it to secure the payment of a large sum of money, which was apparently open and unsatisfied, but that judgments to a large amount against the former owner, Pope, had been entered very soon, one of them only a few days, after Pope had conveyed the property to Connor; yet it does not appear that he made any such examination, and made no inquiry either as to the mortgage or anything else. Add to this the fact that though Utsey had been informed only a day or two before that the agreement for the sale had been made with one person (Connor), he is met by another (Pope), and proceeds to consummate the trade with him, without any explanation whatever being given or asked for, as to why this sudden change in the vendor was made.

But more than this. When Pope presents the papers showing the chain of title, Utsey sees that one of them is a deed, dated that very day, from Connor to Mrs. Pope, the wife of F. M. Pope, a person whom he knew, or ought to have known from the records, was heavily embarrassed, in which the consideration recited was $5,000, which deed contained no warranty whatever, and yet he takes a deed from Mrs. Pope, in which the consideration stated, and actually paid, was $1,750 less than the amount which her deed from Connor showed that she had on the same day paid for the very same property, without making any inquiry whatever, or receiving any explanation of these very singular circumstances. Here was not only a very sudden change in the vendor, but here was a married woman, whose husband had been the owner of the property within less than a year before, and who was then very much embarrassed, selling that property which she held under a quit claim deed, from a person who then held a mortgage apparently unsatisfied, for a sum very much less than what the papers showed she had that very day given for it. Surely these circumstances were well calculated to excite inquiry, and yet none was made.

Indeed, some of the cases go so far as to hold that one who purchases from another holding under a quit claim deed cannot,

by reason of that fact, claim to be a purchaser without notice. See 2 Pom. Eq. Jur., section 753, where the cases, both *pro* and *con*, are cited in a note. Among the cases cited in support of the proposition are two from the Supreme Court of the United States—*Oliver* v. *Piatt*, 3 How., 333, and *May* v. *LeClaire*, 11 Wall., 217. The reason given is that such a purchaser buys no more than what his grantor can lawfully convey; to which we think might be added that the fact that the grantor is unwilling to warrant the title, tends at least to show that there is some defect in the title, known to or apprehended by him, and therefore the purchaser is put upon inquiry. While we are not prepared at present to go to the full extent to which the doctrine has been carried by some of the cases, yet we are satisfied that the fact that the immediate grantor of the purchaser holds under a quit claim deed is a circumstance well calculated to excite inquiry, which, if not pursued properly, will affect the purchaser with notice of every fact which such inquiry, pursued with due diligence, would disclose; and certainly when, as in this case, there are other circumstances of a very suspicious nature, connected with the fact that the immediate grantor of the purchaser held under a quit-claim deed, the conclusion reached by the Circuit Judge may well be sustained.

It is urged, however, that if inquiry had been made, the defect in the title would not have been disclosed, as Connor would not have been likely to confess the fraud in which he had participated. For, to use the language of appellant's counsel: "Connor was anxious at that time to get out of the matter, as he had been a party in the fraud a good while before that time. We think it would be too much to ask any one to believe that he would have revealed the whole matter just at a time when he was about to get out of the difficulty." To say nothing of the fact that this would apply in every case of fraud, it is impossible for any one to say what Connor would have done if inquiry had been made of him before the sale, and the court is not at liberty to speculate about it. We do see, however, that the purchaser had notice, through her agents, of such facts and circumstances as demanded further inquiry, and that none was made. If inquiry had been made, and no information impugn-

ing the title had been obtained, that would have relieved the pur-
chaser; but having failed to make inquiry as the circumstances
demanded, she cannot claim relief upon the ground of a mere
speculation that the persons who could have furnished the de-
sired information would have been unwilling to do so. That
could only be tested by a trial, and none was made.

But we are unable to see what difficulty, *legally* speaking, Con-
nor was in and wanted to get out of, though *morally* considered,
his conduct may well be viewed as reprehensible, and we do not
see how his quit-claim deed to Mrs. Pope, for the purpose of en-
abling her to sell the property as her own, could relieve him
from his moral delinquency. His debt secured by the mortgage
had been extinguished by the conveyance of other property. and
the fact that he held the property in question under a fraudulent
deed, for which he had paid nothing, could not involve him in
any legal difficulty, as all he would have to do would be to sur-
render property which had cost him nothing to its rightful owner.
But more than this. The testimony shows that the first time
Connor was called upon, he stated fully, and no doubt truthfully,
all the circumstances.

It seems to us that the fact that Utsey submitted the papers to
an attorney for an examination of the title, who pronounced it
good, after the sale had been made, titles executed, and
the money paid, cannot affect this question. It was too
late then to make the inquiry which should have been
made before.

It seems to us, therefore, that there is much in the testimony
to sustain the conclusion reached by the Circuit Judge, and cer-
tainly it cannot be said that it is either without any evidence to
sustain it, or is against the manifest weight of the evidence.

The judgment of this court is, that the judgment of the Cir-
cuit Court be affirmed.

MR. JUSTICE McGOWAN. I concur in the result. There was
a complete chain of paper title; deeds purporting to be for val-
uable consideration from Pope to Connor, and back again from
Connor to Mrs. Pope. It is, however, perfectly clear that they
were without consideration, fraudulent, and void. It is true that

of this fraud Mrs. Utsey was entirely innocent. She had no connection whatever with it, or indeed knowledge of it. But, after some hesitation, I cannot resist the conclusion that there was, on the part of those who negotiated the purchase for Mrs. Utsey and paid her money, such a want of ordinary and proper care and inquiry as to prevent her from having the benefit of the plea of purchaser for valuable consideration without notice.