MARTIN v. RAGSDALE.

1. RESULTING TRUST—REAL PROPERTY.—EVIDENCE of a deceased witness taken in a case in which the plaintiffs are practically the same as in this against a remote grantor of defendant, is competent on question of resulting trust in land now in possession of defendant.

2. BAR—TWO ACTIONS—REAL PROPERTY.—An action by trustee to have a judicial declaration that land then in possession of the defendant to that action was held subject to the limitations of a trust deed, is not a bar to an action by the remainderman against defendant's grantor for possession of the land commenced more than two years after dismissal of the former.

3. PURCHASER FOR VALUE WITHOUT NOTICE—QUIT CLAIM DEED.—The fact that land has been once conveyed by several quit claim deeds, and that two last grantors held under full warranty deeds, is not sufficient to prevent a purchaser who believed he was buying a good title from setting up the defense of purchaser for value without notice, under our statute (Code, 1902, 2367), which provides that a quit claim deed is a proper mode of conveying a fee simple title, especially where, as in this case, the facts appearing of record, if pursued, would not have disclosed the facts relied on to defeat such purchaser's title.

*Aultman* v. *Utsey,* 34 S. C., 559, *distinguished from this case and criticised.*

Before GAGE, J., Fairfield, May, 1904.     Reversed.

Action by Mary A. Martin *et al.* against Glenn W. Ragsdale *et al.* From Circuit decree, defendants appeal.

*Mr. G. W. Ragsdale,* for appellants, cites: *Swygert was bona fide purchaser:* 6 S. C., 159; 23 S. C., 494; 1 Story Eq., secs. 409, 308; 2 Pom. Eq., sec. 754; 23 S. C., 494; 21 S. C., 212; 6 Rich. Eq., 176; 31 S. C., 322; 34 S. C., 147; 53 S. C., 30; 14 S. C., 322. *Actual notice will supply place of registration only:* 1 McC., 268; 2 McC., 153; Bail. Eq., 1; 4 Rich., 34; 1 Strob., 573; 3 Strob., 266; 2 McC., 273; Speer's Eq., 212, 244; 6 Rich., 463; 3 S. C., 515; 51 S. C., 348. *Testimony of deceased witness is not admissible:* 1 Strob., 258; 2 McM., 254; 22 S. C., 425; Code, 1902, 2904.

*Mr. J. E. McDonald,* contra, cites: *Testimony of dead witness admissible here:* 1 Green. Ev., secs. 163, 164, 523, 553-55; McKilvey on Ev., 228-232; 2 L. R. A., 78; 9 Ency., 2 ed., 357; 1 Whar. on Ev., 177-181; 98 Am. Dec.,

537; 21 N. J. Eq., 488; 1 N. & McC., 411; 2 Hill, 283; 1 Green. Ev., sec. 325; 9 Ency., 2 ed., 312. *Plea of bona fide purchaser cannot be sustained under facts here:* 34 S. C., 570; 16 Ency., 1 ed., 800, 793; 22 S. C., 32; 23 S. C., 490; 24 S. C., 285; 40 S. C., 148; 2 Pom. Eq. Jur., secs. 753, 626, 627; 14 S. C., 321, 627; 31 S. C., 325; 32 S. C., 490.

## STATEMENT OF FACTS.

The facts are set forth in the decree of his Honor, the Circuit Judge, which is as follows:

"This is an action to recover the possession of two hundred and fifty acres of land. By consent of the parties the cause was referred to W. D. Douglass, Esq., as special referee, to take and report the testimony. His report is in.

"The issues of fact, except one, are not serious; the chief issues are of law.

"The plaintiffs are the lawful issue of one George Butler Pearson, Jr., who died in 1898. They claim title under the limitations of a deed of trust executed 10th March, 1849, by George B. Pearson, Sr., and Elizabeth M. Pearson to Daniel D. Fenly. Counsel do not differ about the terms of that deed; but it is conceded that by the deed the land therein described went to Fenly, trustee, for the uses of George Butler Pearson, Jr., for his life, remainder to his lawful issue living at the time of his death, and that by the deed Fenly had power to sell the land, for change of investment, and to purchase other property subject to the same trusts. The land in issue is not a part and parcel of that conveyed by the trust deed of March 10, 1849; but plaintiffs contend that it was purchased by Fenly from one Coleman, about 1857, and was paid for by the trust money, and became subject to the limitations expressed in the deed of trust. And to prove that, they offer in evidence the testimony of Daniel D. Fenly, delivered in 1882, before a referee, in a cause entitled *Mary A. Pearson et al.* v. *H. H. Yongue,* 25 S. C., 162. Without that testimony, there is no sufficient evidence to

conclude that the land in issue is subject to the limitations aforesaid; with that testimony there is sufficient evidence so to conclude.

"So that, the first issue of law presented is, the competency of Fenly's testimony in this action. The only objection urged against it is, that it was delivered in an action to which the defendants here were not parties, and, therefore, without the privilege of cross-examination by the defendants; for it is the lack of testing by cross-examination which generally renders a sworn statement incompetent evidence against an objecting party thereto. There is no other reason. The former action, in which Fenly's testimony was delivered, was betwixt practically the same plaintiffs as now sue, and one Hazel H. Yongue, a remote assignor of the Ragsdale defendants; and the subject of the two actions was practically the same. (See 25 S. C., 162.) In that action, Fenly was cross-examined, not by the defendants, it is true, but by those who had the same interest which the defendants now have. To ignore Fenly's testimony, therefore, would be to sacrifice a principle rather than execute a rule. I am of the opinion, therefore, that Fenly's testimony is competent; and, furthermore, that it establishes the fact that the land in issue is held by the title expressed in the aforementioned deed of trust.

"I cannot concur in defendant's view that Fenly's testimony could only have been preserved for use by the procedure prescribed at section 2904 of the Code of Laws. That statute expressly provides that the rules of evidence existing at common law may also be resorted to for the establishment of the contents of a lost paper. And I think the testimony of Fenly competent, without reference to the order of September 30th, 1896, which undertook to perpetuate the testimony.

"After the 'former action' by Pearson *v.* Yongue was ended, yet another was begun, entitled Joel P. Fenly, as

trustee, *v.* H. H. Yongue *et al.*   That was in March, 1889;
and the object of the action was, to have a judicial
declaration that the land now in issue, then in
Yongue's possession, was to be held by him subject to
the limitations declared in the aforesaid trust deed.   The
complaint in this second action was dismissed, without a
trial, in March, 1894.   And, therefore, the defendants con-
tend, that when the action by Joel P. Fenly was let fall, an
action like that at bar could only be maintained within two
years after the letting fall of the other action.   (Code of
Procedure, sec. 98, subdiv. 2.)   The suit by Joel was not
'an action to recover real property or the recovery of the
possession thereof.'   The plaintiffs here had a legal estate
in remainder, which could not confer on them a right of pos-
session until the life-tenant (George Butler Pearson, Jr.),
was dead.   Nothing done, or left undone, by Fenly, trustee,
could bar their rights.   *Rice* v. *Bamberg,* 59 S. C., 507, 38
S. E., 209.

"The defendants, lastly, plead that they are protected by
the fact that Swygert bought the land (by taking a mortgage
on it) in good faith, for value, and without notice of any
defect in the title.   With commendable candor, defendants
admit that they had notice of whatever the records hereinbe-
fore cited disclosed.   It is true, they may be protected by
the *bona fides* of Swygert, if he was such a holder.   Indeed,
the main issue in the cause is, was Swygert a *bona fide* pur-
chaser for value, without notice; and thereunder, the issue
of notice is chief.

"The plaintiffs have made out an equitable title, which
must prevail unless the plea set up by the defendants over-
comes it.   That plea the defendants must establish by the
preponderance of the evidence.   The mortgage to Swygert
was made by H. H. Yongue, on the 15th February, 1881,
to secure the payment of a debt of $451.85.   On the issue of
notice, Swygert testified, and the essence of what he said
was this: He lived in the same county with Yongue, about

twelve miles apart from him; had only known Yongue a year when the mortgage was made; Yongue traded at his store; he let Yongue have money for the mortgage; he never had the title examined, and had never heard anything against the title. That is the strongest of the testimony to establish his plea of purchaser without notice; and, stripped of words, it amounts to this: Swygert loaned a man $451.85 and took a mortgage; he had only known the man a year; he was not his neighbor; he did not scrutinize his title; he did not ask him a question, so far as the testimony shows. All Swygert did was to take the mortgage. Ought he to have done more? 'No specific rules have been laid down by which to determine whether the facts in a given case are or are not sufficient to put a party upon inquiry.' *Aultman* v. *Utsey*, 34 S. C., 567, 13 S. E., 848. 'It is manifest that each case must depend largely upon its particular circumstances.' Ditto, p. 568. 'There must appear to be, in the nature of the case, such a connection between the facts (which inquiry would have disclosed) and the further facts to be discovered, that the former could justly be viewed as furnishing a clue to the latter.' *Black* v. *Childs*, 14 S. C., 312.

"In the case at bar, no primary facts were disclosed, because no inquiry was made; but if the primary facts had been discovered, they would have connected with the ultimate fact to be discovered. The ultimate facts were these: Possession of the land by George B. Pearson, Jr., without paper title; its valuable character testified to be $3,000; its sale by the sheriff for $320; its early sale thereafter by the purchaser at sheriff's sale, and that without warranty; its sale by the second purchaser, and again without warranty; the record of this claim of title; the conclusion of fact to be naturally drawn from circumstances, to wit: that the title was suspicious.

"To recur, then, to the duty resting upon Swygert when he purchased: Ought he not to have consulted the records which the law provides to protect all the people of the State?

'Common prudence required that he should have examined the records of the county where the property which he proposed to purchase was located, and if he had done so, he would have discovered that former owners of the title had no confidence in its validity.' *Aultman* v. *Utsey, supra.* If it be the exercise of care and prudence to ignore the records, then it must be an act of negligence to consult them. That cannot be so.

"I am, therefore, of the opinion, that the plea of want of notice is not established by the testimony, and *it is so ordered.*

"*It is further ordered,* That the plaintiff have judgment for the recovery of the lands described in the complaint, with costs."

The appellants' exceptions are as follows:

"1. Because his Honor erred in holding, (1) that John S. Swygert, through whom the defendants claim, was not a *bona fide* purchaser of the premises described in the complaint for valuable consideration without notice.

"2. Because his Honor erred in holding, (1) that a search of the records by Swygert would have disclosed facts sufficient to put him upon the inquiry; (2) that such inquiry would have connected him with certain other ultimate facts showing that the title was suspicious, to wit: 'possession of the land by George B. Pearson, Jr., without paper title; its valuable character, testified to be $3,000; its sale by the sheriff for $320; its early sale thereafter by the purchaser at sheriff's sale, and that without warranty; its sale by the second purchaser, and again without warranty; the record of this claim of title; the conclusion of fact to be naturally drawn from the circumstances, to wit: that the title was suspicious.' The error being, (1) that a search of the records by Swygert would not have disclosed any facts which could have suggested a further inquiry beyond the records; (2) that inquiry beyond the records by Swygert would not have disclosed that George B. Pearson was in possession of the

land, or that it was then worth $3,000 or anything like that
sum, or any other facts from which it could be reasonably
inferred that plaintiffs had an interest in the land; (3) in
confusing the primary facts which were held sufficient to put
Swygert upon the inquiry with the alleged ultimate facts
which it was held that he could have discovered; (4) in
holding that the purchaser is bound to decline a title because
it is 'suspicious.'

"3. Because his Honor erred in holding that the action
by Joel P. Fenly, trustee, *v.* H. H. Yongue and others, was
not 'an action for recovery of real property or the recovery
of the possession thereof,' within the contemplation of sec-
tion 98 of the Code of Procedure, and that 'nothing done or
left undone by Fenly, trustee, could bar plaintiffs' rights;'
whereas, he should have held, (1) that the action by Fenly,
trustee, was plaintiffs' action, and that they were bound
thereby; (2) that the said action was within the express
provisions of section 98 of the Code of Procedure, and that
the plaintiffs could not bring a second 'action for the reco-
very of the premises or the recovery of the possession
thereof,' after the lapse of two years from the time when
the action by Fenly, trustee, was dismissed; (3) and the
plaintiffs could, not bring the present action without first
paying the costs of the action by Fenly, trustee, *v.* Yongue
*et al.*

"4. Because his Honor erred in holding that 'the plaintiffs
have made out an equitable title which must prevail, unless
the plea set up by the defendants overcomes it;' whereas, he
should have held that the plaintiffs did not make out any
title whatsoever to the premises.

"5. Because his Honor erred in admitting, in this action,
the testimony of Daniel D. Fenly, and in holding in reference
thereto as follows: 'I cannot concur in defendants' views
that Fenly's testimony could only have been preserved for
use by the procedure prescribed at section 2904 of the Code
of Laws. That statute expressly provides that the rules of

evidence existing at common law may also be resorted to for the establishment of the contents of a lost paper. And I think the testimony of Fenly competent, without reference to the order of September 30th, 1886, which undertook to perpetuate the testimony.' The error being, (1) that the said testimony was taken in a proceeding which was *res inter alios acta,* and not competent as against defendants; (2) that the said testimony could not be perpetuated except as provided by the statute; (3) that the said testimony could not be perpetuated so as to bind Swygert's interest in an action or proceeding to which he was not a party; (4) that Swygert, not being a party to the action or proceeding by which the said testimony was sought to be perpetuated, as required by section 2904 of the Code of Laws, it could not be admitted as against those claiming his interests.

"6. Because his Honor erred in holding that, under the deed of George B. Pearson, Sr., and Elizabeth M. Pearson to Daniel D. Fenly, of date the 10th of March, 1849, the said Daniel D. Fenly, trustee, had power to sell the land for change of investment and to purchase other property subject to the same trusts. The error being, (1) that Daniel D. Fenly, trustee, was not given power by the said deed to sell, for change of investment or otherwise, that part of the land allotted and laid off to George B. Pearson, Jr.; (2) that when the said land had been so allotted to George B. Pearson, Jr., the power of the trustee was exhausted, the statute of uses executing the use and uniting the legal and equitable estates."

## OPINION.

March 9, 1905. The opinion of the Court was delivered by

MR. JUSTICE GARY (after stating the foregoing facts). We will first consider those exceptions assigning error on the part of the Circuit Judge, in ruling that J. S. Swygert did not occupy the position of purchaser for valuable consideration without notice of the rights of the plaintiffs. Swygert testified that he believed the title

to the land covered by his mortgage was valid, and there is no testimony contradicting this statement. He is, however, chargeable with constructive notice of all the facts disclosed by the record, although he did not make an examination of it. It is, therefore, necessary to determine what notice he would have received if he had consulted the record.

It disclosed the following facts: That in 1867, the sheriff sold and conveyed the land in dispute to James Jones for $320, under an execution issued upon a judgment against G. B. Pearson, Jr.; that in 1868, James Jones conveyed the land to S. B. Clowney for $1,200; the warranty in that deed was as follows: "And I do hereby bind myself, my heirs, executors and administrators, to warrant and forever defend all and singular the said premises unto the said Samuel B. Clowney, his heirs and assigns, against me and my heirs * * * lawfully claiming or to claim the same or any part thereof;" the words "and against all other persons" being erased; that in 1874, S. B. Clowney conveyed the land to H. H. & W. P. Yongue for $1,300; in this deed was a warranty "of all my right and title to the said premises * * * against me and my heirs lawfully claiming, &c.;" the words "and against all other persons" being omitted; that in 1875, H. H. Yongue conveyed to W. P. Yongue all his right, title and interest in the said land in consideration of $400, with full warranty; that in 1878, W. P. Yongue conveyed to H. H. Yongue in consideration of $1,300, with full warranty.

It will thus be seen that not only was there a general warranty in the deed held by Swygert's *immediate* grantor, but there was likewise a general warranty in the deed held by his grantor. The authorities are conflicting as to whether a person can interpose the defense of purchaser for valuable consideration without notice, when he derives his title from one holding under a mere quit claim deed. In the case of *Aultman* v. *Utsey*, 34 S. C., 559, 571, 13 S. E., 848, the Court says: "Some of the cases go so far as to hold that one who purchases from another, holding under a quit claim

deed, cannot, by reason of that fact, claim to be a purchaser without notice.    See 2 Pom. Eq. Jur., sec. 753, where the cases both *pro* and *con* are cited in a note.    Among the cases cited in support of the proposition are two from the Supreme Court of the United States—*Oliver* v. *Platt,* 3 How., 333, and *May* v. *LeClaire,* 11 Wall., 217.    The reason given is, that such a purchaser buys no more than what his grantor can lawfully convey; to which, we think, might be added, that the fact that the grantor is unwilling to warrant the title, tends at least to show that there is some defect in the title, known to or apprehended by him, and, therefore, the purchaser is put upon inquiry.    While we are not prepared at present to go to the full extent to which the doctrine has been carried by some of the cases, yet we are satisfied that the fact that the immediate grantor of the purchaser holds under a quit claim deed, is a circumstance well calculated to excite inquiry, which, if not pursued properly, will affect the purchaser with notice of every fact which such inquiry, pursued with due diligence, would disclose; and certainly when, as in this case, there are other circumstances of a very suspicious nature, connected with the fact that the immediate grantor of the purchaser held under a quit claim deed, the conclusion reached by the Circuit Judge may be well sustained."

The cases of *Oliver* v. *Platt,* 3 Howard, 333, and *May* v. *LeClaire,* 11 Wall, 217, assign as the reason why one, who purchases from another holding under a quit claim deed, cannot set up the plea that he is a purchaser for valuable consideration without notice, is, that a quit claim deed does not convey the fee, but only the right, title and interest of the grantor.

In this State, a quit claim deed is a lawful mode of conveying land in fee simple, as will be seen by reference to sec. 2367 of the Code of Laws, which is as follows: "Sec. 2367. The following form or purpose of a release shall, to all intents and purposes, be valid and effectual to carry

from one person to another or others the fee simple of any land or real estate, if the same shall be executed in the presence of and be subscribed by two or more credible witnesses." (Then follows the usual form of a deed of conveyance with general warranty) : *"Provided,* This section shall be so construed as not to oblige any person to insert the clause of warranty, or to restrain him from inserting any other clause or clauses, in conveyances hereafter to be made, as may be deemed proper and advisable by the purchaser and seller, or to invalidate the forms hereinbefore in use within this State."

This statute does not seem to have been considered in *Aultman* v. *Utsey, supra.* The facts of that case are, however, quite different from those in the case under consideration. In that case, the *immediate* grantor held under a quit claim deed, while in the present case not only the immediate grantor, but his grantor likewise, held under a deed with general warranty.

In view of the statute just quoted, we are unwilling to extend the doctrine announced in the case of *Aultman* v. *Utsey, supra.* As the statute provides that a quit claim deed shall be a lawful method of conveying land in fee simple, we fail to see why it should be incumbent upon a purchaser to make inquiry, simply because there is a quit claim deed in the chain of title, especially when the quit claim deed was executed many years previous to the purchase, and there are subsequent deeds with full warranty.

But even if there was enough to put Swygert upon the inquiry, it does not appear that due diligence on his part would have led to knowledge of the plaintiffs' rights. There was no connection between the facts of which he had constructive notice and the rights of the plaintiffs. Therefore, the facts of which he had notice did not furnish a clue to the other facts to be disclosed. The exceptions raising the question under consideration must be sustained.

The decree satisfactorily disposes of the questions presented by the other exceptions, and this Court desires to add only a single authority to show that the ruling of which the fifth exception complains, was correct. In *Koogler v. Huffman,* 1 McC., 495, the Court uses this language: "In the argument below, it was contended that the decree and proceedings in the court of equity, ought not to be given in evidence, because the defendant was not a party to them; and the general doctrine that judgments cannot be given in evidence, except between parties and privies, was relied on. As to this form of objection, the law is clear upon collateral matter, any judgment or decree may be introduced. All that is meant by the rule is that the rights of a party cannot be determined on conclusively unless he be a party." This case is cited with approval in *Phillips v. Yon,* 61 S. C., 426, 39 S. E., 618.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed.

MR. CHIEF JUSTICE POPE *disqualified.*