16372

## KNOTTS v. JOINER
(59 S. E. (2d) 850)

Messrs. *T. A. Houser* and *Hydrick & Hydrick,* of Orangeburg, *for Appellant,*

Messrs. *C. E. Summers* and *Thomas R. Wolfe,* of Orangeburg, *for Respondent,*

June 14, 1950.

STUKES, JUSTICE.

Respondent's grandfather was John Amaker, of Orangeburg County, who died in 1905 leaving a will by which he devised the land involved in this action to his wife for life, then to his daughter for her life and remainder in fee to her issue. The daughter was respondent's mother who predeceased her mother, leaving four children. The widow of testator died in 1935, at which time respondent and his three sisters became entitled to possession as tenants in common under the terms of the will. Respondent, who was born in 1908, left his Orangeburg home in 1927 when he enlisted in the army. After successive enlistments he was discharged and thereafter lived in distant western states until Thanksgiving Day in 1948 when he returned to his native county.

The undivided interest in the land of one of his sisters was sold under execution for taxes in 1934 and conveyed by the County Tax Collector to Mrs. Julia J. Cleckley by deed dated March 22, 1938. The grantee was the aunt of respondent and his sisters. The two other sisters joined in a conveyance to Mrs. Cleckley by deed dated March 25, 1937, describing the property conveyed as "all our right, title and interest of, in and to" etc.

The aforementioned conveyances to Mrs. Cleckley were recorded at the same time in the office of the Clerk of Court on March 26, 1938. On that date, by deed recorded at the same time, Mrs. Cleckley undertook to convey the land to appellant without express reference to her limited acquisitions but at the end of the description there was added the following: "Being the same tract of land conveyed to me by C. H. Williams, Collector of Delinquent Taxes, by his deed of conveyance bearing date the 22nd day of March,

1938, and being the same tract of land conveyed to me by Mrs. Alice Knotts Whetstone and Mrs. Mae Knotts Waugh by their deed of conveyance bearing date the 25th day of March, 1938." The deed was a printed form but the warranty clause was so stricken with pen as to change it from the usual general warranty to a special warranty, that is, against the heirs of the grantor only.

Upon his return to the state after about twenty-one years' absence respondent, who knew of the devise of his grandfather to him, investigated the status of the land, found appellant in possession, and demanded his one-fourth interest and an accounting for the rents and profits. Upon appellant's refusal of the demand this action for partition and accounting was commenced. Appellant pleaded the Statute of Limitations and title by adverse possession. The County Judge as special referee took the testimony and upheld the defenses. Comparison of the above stated dates shows that a little over ten years time elapsed between the conveyance of the land to appellant by Mrs. Cleckley, under which appellant went into possession, and respondent's return, demand and suit.

Upon exceptions to the report of the referee the Circuit Court reversed upon the ground that the issues should be decided under the law applicable to cotenants and that the conveyance to appellant and his possession thereunder did not constitute ouster, necessary to the commencement of the running of the statutes in such cases. That is the crux of the controversy.

The general rule is that the possession of one cotenant is the possession of all (which is a variation of the rule that unexplained possession raises a presumption of adverse possession) and the lower court applied this rule and held, in effect, that the conveyance to appellant vested in him only the three undivided interests acquired by Mrs. Cleckley by the deeds which have been described, which left respondent's one-fourth interest outstanding and

made him and appellant cotenants. The court observed the contents of the deed to appellant, to which reference has been made, which it was concluded put appellant on notice, if such was necessary, that he thereby acquired only the three-fourths undivided interests of respondent's sisters. Further the court gave credence to testimony of admissions by appellant to others at about the time of his acquisition and afterward that respondent's interest was outstanding and that he would have to cope with it upon demand. Appellant lived in the neighborhood, had full knowledge of respondent's family and the status of the title. Upon all of the evidence the court found that there had been no ouster of respondent which would have given currency to the statutes.

Appellant places chief reliance upon the case of *Sudduth v. Sumeral,* 61 S. C. 276, 39 S. E. 534, 85 Am. St. Rep. 883, in which it was said that where one goes into possession of land under a deed from a third person which purports on its face to convey an absolute title to the entire interest in land, and such deed is recorded, this is notice to the world of his claim to the entire interest and his possession may thereafter be adverse to a cotenant; in other words, that this may go to show ouster of a cotenant. That is the rule in this and other jurisdictions as is shown by the authorities which will be cited. The statement of it in *Sudduth v. Sumeral* was in the testing of the accuracy of instructions to the jury which tried that case. The verdict there was in favor of the adverse claimant; here the appeal is from the finding of a chancellor which was favorable to the cotenant, and the conclusion was supported in the evidence and certainly not contrary to the weight of it, so it should not be reversed by this court. The facts of *Sudduth v. Sumeral* were strikingly stronger for the adverse claimant than in the instant case. It appears from the report that the defendant Sumeral was in adverse possession (under deed purporting to convey the fee with general warranty) for a period of twenty-one years before the action was brought.

Here a little over ten years elapsed and the nature of the deed to appellant has been mentioned. The frailty of it for the purpose present here was incidentally adverted to in *Graniteville Co. v. Williams,* 209 S. C. 112, 39 S. E. (2d) 202.

Volume 4 of Tiffany on Real Property, 3d Ed., sec. 1185, page 526 *et seq.,* contains a valuable discussion of adverse possession of one cotenant against another, with which our decisions are not out of line. The latter are found in 31 S. E. Dig., Tenancy in Common, Par. 10 *et seq.,* page 610 *et seq.* and Supp., the last of which is *Wells v. Coursey,* 197 S. C. 483, 15 S. E. (2d) 752. With reference to ouster in such cases it is said at pages 528, 529, as follows: "The distinction appears to be in effect, that while the exclusive possession of one cotenant does not involve an ouster of the other, so as to start the running of the statute, the fact that one cotenant is in sole possession for twenty, thirty, or forty years, without any claim being made by the other, justifies a finding that an ouster had taken place, because men do not ordinarily sleep on their rights for so long a period, and a strong presumption arises that actual proof of the original ouster has become lost by lapse of time." With reference to the status of a third person to whom conveyance has been made by one cotenant, it is said as follows at page 535: "If, however, the conveyance purports to be, not of the entire interest in the property, but of the interest of the grantor merely, the possession of the grantee is prima facie like that of his grantor, that of a cotenant only, and not adverse to the other cotenant, and the latter is justified is assuming this to be the case." On page 528 it is pointed out that the rule is not one of law which forbids the application of the Statute of Limitations to a cotenant but is merely a rule of evidence which enters into the question of whether there has been an ouster and whether the possession of one cotenant is in fact adverse to the claim of the other.

1 Walsh, Commentaries Law of Real Property, 168, 169, includes the following: "An ouster of one cotenant by another, either by physically ousting him from the possession or denying him his share of the rents and profits under a claim of sole ownership inferred from the acts of the wrongdoer, or by excluding him therefrom if he is out of possession, must be established in order that the ousted tenant may maintain ejectment. The possession of each is rightful until such ouster of one by the other is established, and the statute cannot begin to run until the cause of action has arisen. Claim of sole ownership is established by the conduct of the wrongdoer in actually ousting his cotenant or using the property exclusively for his own purposes in such way as necessarily to deny the cotenant's right and of which the cotenant has actual notice, or the acts are so openly and notoriously hostile that in the exercise of reasonable diligence he would necessarily have such notice."

Conclusions in conformity with the foregoing appear in 1 Am. Jur. 828 *et seq.,* Adverse Possession, secs. 58, 59, 60.

The exceptions are overruled and the judgment affirmed.

BAKER, C. J., and FISHBURNE, TAYLOR and OXNER, JJ., concur.