635 S.E.2d 649

**Kenneth E. BENNETT, Richard K. Bennett, James M. Hendershot, and Robert N. Parker, III, Appellants,**

v.

**INVESTORS TITLE INSURANCE COMPANY, Respondent,**

Investors Title Insurance Company, Respondent,

v.

**Crescent Resources, LLC, Bristol, LLC and CBS Surveying & Mapping, Inc., Respondents.**

**No. 4152.**

Court of Appeals of South Carolina.

Heard Sept. 12, 2006.

Decided Sept. 25, 2006.

580

Randall S. Hiller, of Greenville, for Appellants.

Louis H. Lang, of Columbia, for Respondent Investors Title Insurance Company.

V. Clark Price, of Greenville and Benjamin A. Johnson, both of Rock Hill, for Respondent Crescent Resources, LLC.

Warren C. Powell, Jr., of Columbia, for Respondent CBS Surveying and Mapping, Inc.

ANDERSON, J.:

In this dispute over liability for a surveying error, Kenneth E. Bennett, Richard K. Bennett, James M. Hendershot, and Robert N. Parker, III, (collectively Appellants), appeal the circuit court's orders granting summary judgment to Crescent Resources, LLC and Investors Title Insurance Company. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

On December 28, 2001, Crescent conveyed 47.82 acres of real property in Oconee County (the Property) to Bristol, LLC for $2.5 million. Crescent's deed to Bristol (the Deed), entitled "Special Warranty Deed," contains a granting clause referring to an attached property description, which, in turn, incorporates a plat (the Plat). CBS Surveying and Mapping, Inc. prepared the Plat for Crescent on December 22, 2000. The Plat shows a sixty-six foot right-of-way easement, entitled "SC 188 KEOWEE SCHOOL RD (66' R/W)," on the western boundary of the Property.

The habendum clause of the Deed reads, in pertinent part:

**TO HAVE AND TO HOLD** all and singular the Property, unto the said Grantee and Grantee's heirs, successors and assigns forever, except:

. . . .

(5) matters affecting title to the Property as shown on the Plat or which would be shown on a current and accurate survey of the Property (including any encroachments);

(6) easements, covenants, restrictions and conditions of record, and rights-of-way of public and private streets and roads, including, but not limited to, the road shown on the Plat as "old road bed" and the sixty-six (66) foot wide road right-of-way shown on the Plat as "SC 188 Keowee School Road (66' R/W)". . . .

The Deed further provides that Crescent "covenants to warrant specially the title to the Property against the lawful claims of any person claiming from, through, or under it."

Later on the same day, Bristol conveyed the Property by general warranty deed to Appellants. Anticipating this con-

veyance, Investors issued a title insurance commitment to Executive Properties, LLC. This commitment agreed to provide an owner's title insurance policy to Executive.[1] On January 4, 2002, Appellants procured from Investors an owner's title insurance policy (the Policy) covering the Property. The Policy expressly "does not insure against loss or damage (and [Investors] will not pay costs, attorneys' fees or expenses) which arise by reason of ... [s]uch state of facts as would be disclosed by a current and accurate survey of said premises."

Subsequently, Appellants built two brick walls within forty-one feet of the centerline of South Carolina Highway 188. On April 25, 2002, the South Carolina Department of Transportation (SCDOT) wrote Appellants, informing them SCDOT had a 200 foot right-of-way easement over the Property. This right-of-way easement, dated August 1, 1968, and recorded at SCDOT shows Crescent granted the 200 foot right-of-way to SCDOT.[2] *See* S.C.Code Ann. § 57–5–550 (2006) (directing all rights-of-way for state highways be filed at SCDOT).

Presumably, Appellants notified Investors of this problem and demanded payment for their loss. Investors alleged Appellants offered to settle the claim for $85,225. Investors explained Appellants arrived at this number by appraising the Property, dividing that number by the total number of acres included in the Property, and applying that per acre value to the acreage mistakenly assumed to be unencumbered. Investors further claimed it rejected this demand because the eastern portion of the Property bordered a lake, and this acreage would be valued higher than the portion bordering Highway 188. Investors additionally asserted it hired the

1. Investors later referred to this commitment as one made to Appellants. Appellants deeded the Property to Executive on June 10, 2002. During a hearing, Appellants' attorney indicated they had formed Executive "for the purposes of developing the Property." Executive is not a party to the circuit court proceedings or this appeal.

2. Crescent Resources, LLC conveyed the Property to Bristol. The Deed indicates Crescent Resources, LLC is "a successor by merger and conversion to Crescent Resources, Inc., whose name was changed from Crescent Land and Timber Corp." Crescent Land and Timber Corp. granted the easement to SCDOT.

same appraiser Appellants used to value the specific acreage lost. This appraiser valued the lost acreage at $64,000.

As a result, Investors sent Appellants a settlement check in the amount of $64,000 and a settlement agreement, which Appellants never executed. Investors explained Appellants hired a different attorney, who rejected the settlement offer and demanded $196,800 to settle the claim, including the "value of the improvements that were required to be relocated and/or destroyed due to the title defect. . . ." Investors refused to pay this amount, claiming the title policy excluded consequential damages. Appellants eventually agreed to settle the claim for the lost value of the Property for $64,000 but retained its consequential damages claim.

On June 26, 2003, Appellants filed a complaint against Investors, alleging breach of the title insurance contract and bad faith. Investors answered and eventually filed an amended answer, including a third-party complaint against Crescent, Bristol, and CBS. Appellants then filed an amended complaint, alleging a breach of deed warranty by Crescent and Bristol and negligence by CBS. Crescent filed separate answers to Appellants' amended complaint and Investors' third-party complaint.[3]

In June 2004, Investors moved for summary judgment against Appellants, explaining it attempted to settle the claim and Appellants had not answered its settlement offer. According to Investors, the circuit court held a hearing on this motion, at which the parties discovered they possessed two different title insurance policy jackets with identical policy inserts. The jacket relied upon by Investors excepted claims for consequential damages. The circuit court allowed the parties time to supplement their arguments and Investors time to amend its motion.

In August, Investors filed an amended motion for summary judgment against Appellants. On January 11, 2005, Crescent

---

**3.** Although our case caption lists CBS and Bristol as Respondents, the record does not include any pleadings, motions, or orders from these parties, except the transcript of a motion to compel heard by the circuit court. CBS and Bristol did not submit briefs on appeal and were not parties to the circuit court's orders. Additionally, the record does not disclose the procedural position of either party at the time of this appeal.

moved for summary judgment against both Appellants and Investors. In February 2005, Investors again amended its motion for summary judgment.

The circuit court granted Crescent's motion for summary judgment against both Appellants and Investors, holding exceptions (5) and (6) in the Deed's habendum clause limited Crescent's special warranty. Furthermore, the circuit court applied this ruling to Investors, finding Investors could not recover more than Appellants could recover. Although not included in the record, Appellants and Investors filed motions to reconsider this order, which the circuit court denied. However, the court entered an amended order, correcting minor factual errors.

Summary judgment was granted to Investors with respect to Appellants' breach of contract and bad faith claims. The circuit court held the Policy specifically excluded all matters a current and accurate survey would disclose, including the claim asserted here. Appellants appealed both summary judgment orders.[4]

## STANDARD OF REVIEW

■ When reviewing the grant of a summary judgment motion, the appellate court applies the same standard which governs the trial court under Rule 56(c), SCRCP: summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *David v. McLeod Reg'l Med. Ctr.*, 367 S.C. 242, 247, 626 S.E.2d 1, 3 (2006); *Miller v. Blumenthal Mills, Inc.*, 365 S.C. 204, 219, 616 S.E.2d 722, 729 (Ct.App.2005). In determining whether any triable issues of fact exist, the evidence and all reasonable inferences must be viewed in the light most favorable to the non-moving party. *Law v. S.C. Dep't of Corrections*, 368 S.C. 424, 434, 629 S.E.2d 642, 648 (2006); *Eagle Container Co., LLC v. County of Newberry*, 366 S.C. 611, 620, 622 S.E.2d 733, 737 (Ct.App.2005). If triable issues exist, those issues must go the jury. *Mulherin–Howell*

---

4. Investors separately appealed the circuit court's grant of summary judgment to Crescent. *See* Court of Appeals Docket No. 14360, *Bennett v. Investors (2)*, 370 S.C. 561, 635 S.E.2d 660, 2006 WL 2728932 (Ct.App.2006).

*v. Cobb*, 362 S.C. 588, 595, 608 S.E.2d 587, 591 (Ct.App.2005). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP; *Law*, 368 S.C. at 434, 629 S.E.2d at 648; *BPS, Inc. v. Worthy*, 362 S.C. 319, 325, 608 S.E.2d 155, 159 (Ct.App.2005). On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party below. *Sloan v. Friends of Hunley, Inc.*, 369 S.C. 20, 25, 630 S.E.2d 474, 477 (2006); *see also Schmidt v. Courtney*, 357 S.C. 310, 317, 592 S.E.2d 326, 330 (Ct.App.2003) (stating that all ambiguities, conclusions, and inferences arising from the evidence must be construed most strongly against the moving party).

▮▮▮▮ Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Gadson v. Hembree*, 364 S.C. 316, 320, 613 S.E.2d 533, 535 (2005); *Miller*, 365 S.C. at 220, 616 S.E.2d at 729; *Montgomery v. CSX Transp., Inc.*, 362 S.C. 529, 608 S.E.2d 440 (Ct.App.2004). Even when there is no dispute as to evidentiary facts, but only as to the conclusions or inferences to be drawn from them, summary judgment should be denied. *Nelson v. Charleston County Parks & Recreation Comm'n*, 362 S.C. 1, 5, 605 S.E.2d 744, 746 (Ct.App.2004). However, when plain, palpable, and indisputable facts exist on which reasonable minds cannot differ, summary judgment should be granted. *Rife v. Hitachi Const. Mach. Co., Ltd.*, 363 S.C. 209, 214, 609 S.E.2d 565, 568 (Ct.App.2005); *Ellis v. Davidson*, 358 S.C. 509, 518, 595 S.E.2d 817, 822 (Ct.App. 2004).

▮▮▮▮ The party seeking summary judgment has the burden of clearly establishing the absence of a genuine issue of material fact. *Jones v. State Farm Mut. Auto. Ins. Co.*, 364 S.C. 222, 228, 612 S.E.2d 719, 722 (Ct.App.2005). The moving party may discharge the burden of demonstrating the absence of a genuine issue of material fact by pointing out the absence of evidence to support the nonmoving party's case. *Lanham*

*v. Blue Cross and Blue Shield of South Carolina, Inc.*, 349 S.C. 356, 361, 563 S.E.2d 331, 333 (2002). Once the party moving for summary judgment meets the initial burden of showing an absence of evidentiary support for the opponent's case, the opponent cannot simply rest on mere allegations or denials contained in the pleadings. *Wogan v. Kunze*, 366 S.C. 583, 591, 623 S.E.2d 107, 112 (Ct.App.2005). The nonmoving party must come forward with specific facts showing there is a genuine issue for trial. *Rife*, 363 S.C. at 214, 609 S.E.2d at 568.

The purpose of summary judgment is to expedite the disposition of cases which do not require the services of a fact finder. *Dawkins v. Fields*, 354 S.C. 58, 69, 580 S.E.2d 433, 438 (2003); *Eagle Container*, 366 S.C. at 621, 622 S.E.2d at 738; *Rumpf v. Massachusetts Mut. Life Ins. Co.*, 357 S.C. 386, 393, 593 S.E.2d 183, 186 (Ct.App.2004). Because it is a drastic remedy, summary judgment should be cautiously invoked to ensure that a litigant is not improperly deprived of a trial on disputed factual issues. *Helena Chem. Co. v. Allianz Underwriters Ins. Co.*, 357 S.C. 631, 644, 594 S.E.2d 455, 462 (2004); *Wogan*, 366 S.C. at 592, 623 S.E.2d at 112; *B & B Liquors, Inc. v. O'Neil*, 361 S.C. 267, 270, 603 S.E.2d 629, 631 (Ct.App. 2004).

## *LAW/ANALYSIS*

### I. Appellants v. Crescent

Appellants contend the circuit court erred in holding exceptions (5) and (6) in the habendum clause of the Deed limited Crescent's special warranty. Appellants argue (1) the granting clause and its incorporation of the Plat created a representation or covenant of the width of SCDOT's right-of-way; (2) Crescent failed to convey 47.82 acres of real property, as provided in the property description of the Deed; (3) the habendum clause was ambiguous; and (4) the Deed's special warranty clause automatically protects Bristol and subsequent purchasers against claims created by Crescent; otherwise, the Deed would be a quitclaim deed. We disagree.

### A. Construction of the Deed

■ The construction of a clear and unambiguous deed is a question of law for the court. *Hammond v. Lindsay*, 277 S.C.

182, 184, 284 S.E.2d 581, 582 (1981); *Hunt v. Forestry Comm'n,* 358 S.C. 564, 568, 595 S.E.2d 846, 848 (Ct.App.2004); *see also Vause v. Mikell,* 290 S.C. 65, 68, 348 S.E.2d 187, 189 (Ct.App.1986) ("The construction of an unambiguous deed is a question of law, not fact."). " '[I]t is the duty of the court to construe deeds and determine their legal effect, where there is no such ambiguity as requires parol proof and submission to the jury.' " *Hunt,* 358 S.C. at 569, 595 S.E.2d at 848 (quoting 26A C.J.S. *Deeds* § 168 (2001)).

 "One of the first canons of construction of a deed is that the intention of the grantor must be ascertained and effectuated if no settled rule of law is contravened." *S. Ry. Co. v. Smoak,* 243 S.C. 331, 336, 133 S.E.2d 806, 808 (1963); *Wayburn v. Smith,* 270 S.C. 38, 41, 239 S.E.2d 890, 892 (1977); *Estate of Sherman ex rel. Maddock v. Estate of Sherman ex rel. Snodgrass,* 359 S.C. 407, 413, 597 S.E.2d 850, 853 (Ct.App. 2004); *see also McDaniel v. Connor,* 206 S.C. 96, 100, 33 S.E.2d 75, 76 (1945) ("As has many times been said, the governing principle in the construction of deeds is that the intention of the grantor, if consistent with law, shall govern."). Moreover, in ascertaining such intention, the deed must be construed as a whole and effect given to every part thereof, if such can be done consistently with law. *Wayburn,* 270 S.C. at 42, 239 S.E.2d at 892; *Bean v. Bean,* 253 S.C. 340, 343, 170 S.E.2d 654, 655 (1969); *Alexander v. Burnet,* 39 S.C.L. (5 Rich.) 189, 196 (1851); *see also First Carolinas Joint Stock Land Bank of Columbia v. Ford,* 177 S.C. 40, 46, 180 S.E. 562, 565 (1935) ("Larger and more sensible rules of construction require that the whole deed should be considered together, and effect be given to every part, if all can stand together consistently with law....").

### B. Clauses in the Deed

 Guided by our mandate to read the Deed as a whole, we examine the specific clauses therein. The term "premises" is used to refer to "all that part of [a] deed preceding the habendum clause, containing generally the names or description of the parties; explanatory recitals, including consideration and its receipt; a description of the realty; the exception, if any; and sometimes a designation of the estate or interest conveyed." 26A C.J.S. *Deeds* § 35 (2001); *see also*

*Artis v. Artis*, 228 N.C. 754, 47 S.E.2d 228, 232 (1948) ("Ordinarily the premises and granting clauses designate the grantee and the thing granted, while the habendum clause relates to the quantum of the estate.").

In South Carolina, the term "granting clause" is used. This court in *Hunt v. Forestry Comm'n*, 358 S.C. 564, 566–67, 595 S.E.2d 846, 847 (Ct.App.2004), referred to the following language in a deed as the "granting clause:"

> The First Carolinas Joint Stock Land Bank of Columbia . . . [has] granted, bargained, sold and released, and by these presents [does] grant, bargain, sell and release unto the said [SCFC] and their successors in office all that certain piece. . . .

(emphasis removed); *see also Estate of Sherman*, 359 S.C. at 409, 597 S.E.2d at 850–51 (referring to similar language in another deed as the "granting clause"). The granting clause in the Deed incorporates an attached property description which, in turn, incorporates the Plat.

The Latin phrase "habendum et tenendum" means "to have and to hold." *Black's Law Dictionary* 716 (7th ed. 1999). Thus, in *Hunt*, 358 S.C. at 567, 595 S.E.2d at 847, this court quoted the habendum clause in that deed: "To Have and to Hold all and singular the premises before mentioned unto the said [SCFC] and their successors in office, and assigns forever." (emphasis removed); *see also Smoak v. McClure*, 236 S.C. 548, 549, 115 S.E.2d 55, 55 (1960) ("The habendum clause is regular in form, as follows: 'To have and to hold, all and singular, the said premises before mentioned unto the said Ben Garris, and his Heirs and Assigns forever.' ").

The habendum "is the clause usually following the granting part of the premises of a deed, which defines the extent of the ownership in the thing granted to be held and enjoyed by the grantee." 26A C.J.S. *Deeds* § 36 (2001). Accordingly, in South Carolina, "the estate conveyed by the deed must be determined from the whole deed including the habendum clause." *Batesburg–Leesville Sch. Dist. No. 3 v. Tarrant*, 293 S.C. 442, 445, 361 S.E.2d 343, 345 (Ct.App.1987). Luculently, the habendum clause in the Deed is the section beginning "TO HAVE AND TO HOLD . . ."

■ The habendum clause in the Deed is followed by Crescent's covenant to Bristol whereby Crescent "covenants to warrant specially the title to the Property against the lawful claims of any person claiming from, through, or under it." "The doctrine of caveat emptor ... has, in the absence of fraud and misrepresentation long governed the obligations of the parties in the sale of real estate in this State." *Rutledge v. Dodenhoff*, 254 S.C. 407, 412, 175 S.E.2d 792, 794 (1970). In South Carolina, the purchaser of unimproved land must covenant to protect whatever special rights or interests he would presume to acquire in the land. *Jackson v. River Pines, Inc.*, 276 S.C. 29, 31, 274 S.E.2d 912, 913 (1981); *see also* 21 C.J.S. *Covenants* § 14 (1990) ("The only protection of title afforded a purchaser of land is in the covenants contained in the deed.").

■ In *Martin v. Floyd*, 282 S.C. 47, 51, 317 S.E.2d 133, 136 (Ct.App.1984), this court explained:

A South Carolina general warranty deed embraces all of the following five covenants usually inserted in fee simple conveyances by English conveyors: (1) that the seller is seized in fee; (2) that he has a right to convey; (3) that the purchaser, his heirs and assigns, shall quietly enjoy the land; (4) that the land is free from all encumbrances; and (5) for further assurances.

A grantor seeking to include all the common law covenants of title may use the language in section 27–7–10 of the South Carolina Code to carry out this effect. The statute reads:

The following form or purport of a release shall, to all intents and purposes, be valid and effectual to carry from one person to another or others the fee simple of any land or real estate if it shall be executed in the presence of and be subscribed by two or more credible witnesses:

The State of South Carolina.

Know all men by these presents that I, A B, of _____, in the State aforesaid, in consideration of the sum of ____ dollars, to me in hand paid by C D of _____ County, State of _____, the receipt of which is hereby acknowledged, have granted, bargained, sold and released and by these presents do grant, bargain, sell and release unto the said C D all that (here describe the premises), together with all and singular the

rights, members, hereditaments and appurtenances to said premises belonging or in any wise incident or appertaining; to have and to hold all and singular the premises before mentioned unto said C D, his heirs and assigns, forever. And I do hereby bind myself, my heirs, executors, and administrators, to warrant and forever defend all and singular said premises unto said C D, his heirs and assigns, against myself and my heirs and against every person whomsoever lawfully claiming or to claim the same, or any part thereof.

Witness my hand and seal this _____ day of _____ in the year of our Lord _____ and in the _____ year of the independence of the United States of America. _____ [L.S.]

S.C.Code Ann. § 27–7–10 (Supp.2005); see 17 S.C. Jur. Covenants § 32 (Supp.2005). However, section 27–7–10 does not preclude the grantor from using other language of warranty in a deed.

Section 27–7–10 shall be so construed as not to oblige any person to insert the clause of warranty or to restrain him from inserting any other clause in conveyances, as may be deemed proper and advisable by the purchaser and seller, or to invalidate the forms formerly in use within this State.

S.C.Code Ann. § 27–7–20 (Supp.2005).

A "special warranty" is "[a] warranty against any person's claim made by, through, or under the grantor or the grantor's heirs." Black's Law Dictionary 1581 (7th ed. 1999). The deed at issue in Knotts v. Joiner, 217 S.C. 99, 102, 59 S.E.2d 850, 851 (1950), "was a printed form but the warranty clause was so stricken with pen as to change it from the usual general warranty to a special warranty, that is, against the heirs of the grantor only." A quitclaim deed, on the other hand, does not convey the fee, but only the right, title, and interest of the grantor. Martin v. Ragsdale, 71 S.C. 67, 77, 50 S.E. 671, 674 (1905).

## C. Incorporation of the Plat

Appellants' first contention that the incorporation of the Plat creates a representation or covenant of the width of

SCDOT's right-of-way completely ignores the habendum and warranty clauses in the Deed.

"The question as to the purpose and effect of a reference to a plat in a deed is ordinarily one as to the intention of the parties to be determined from the whole instrument and the circumstances surrounding its execution." *Lancaster v. Smithco, Inc.,* 246 S.C. 464, 468, 144 S.E.2d 209, 211 (1965). When a deed describes land as shown on a certain plat, such plat becomes part of the deed for the purpose of showing the boundaries, metes, courses and distances of the property conveyed. *Hobonny Club, Inc. v. McEachern,* 272 S.C. 392, 397, 252 S.E.2d 133, 136 (1979); *Carolina Land Co., Inc. v. Bland,* 265 S.C. 98, 105, 217 S.E.2d 16, 19 (1975); *see also Holly Hill Lumber Co. v. Grooms,* 198 S.C. 118, 135, 16 S.E.2d 816, 823 (1941) (" 'As a general rule, when maps, plats, or field notes are referred to in a grant or conveyance they are to be regarded as incorporated *into* the instrument and are usually held to furnish the true description of the boundaries of the land . . . .' ") (citation omitted).

In *Blue Ridge Realty Co. v. Williamson,* 247 S.C. 112, 118, 145 S.E.2d 922, 925 (1965), our Supreme Court stated the general rule that when the owner of land has it subdivided and platted into lots and streets and sells and conveys lots with reference to the plat, he thereby dedicates said streets to the use of such lot owners, their successors in title, and the public. *See also Carolina Land Co.,* 265 S.C. at 105, 217 S.E.2d at 19. Thus, the purchaser of lots with reference to the plat of the subdivision acquires every easement, privilege and advantage shown upon said plat, including the right to the use of all the streets, near or remote, as laid down on the plat by which the lots are purchased. *Blue Ridge,* 247 S.C. at 119–20, 145 S.E.2d at 925; *Carolina Land Co.,* 265 S.C. at 105, 217 S.E.2d at 19.

In *Lancaster,* 246 S.C. at 469, 144 S.E.2d at 211, "[t]he only reference in the deed in th[e] case to the plat was in connection with the description of the lot." Therefore, such reference to the recorded plat made it a part of the deed for the purpose of showing the boundaries, metes, courses and distances of the property conveyed. *Id.* In that case, our Supreme Court edified:

*A plat,* however, *is not an index to encumbrances, and the mere reference in a deed,* as in this case, *to a plat for descriptive purposes does not incorporate a notation thereon as to an easement held by a third party* so as to exclude such easement from the covenant against encumbrances in the absence of a clear intention that it so operate.

*Id.*

Both *Blue Ridge* and *Lancaster* look to the intention of the parties in incorporating a plat to determine its effect. In the instant case, a reading of the Deed as a whole reveals the parties used the Plat as a reference to the boundaries, metes, courses and distances of the property conveyed. However, Crescent unambiguously put the burden of obtaining an accurate survey on Appellants and excluded from its grant "matters affecting title to the Property as shown on the Plat," matters "which would be shown on a current and accurate survey of the Property," and rights-of-way of public streets and roads. Moreover, Appellants do not dispute "[t]he actual dimensions and location of a highway right of way are things that will be revealed by a current and accurate survey of the property prepared by the surveyor." The intention of the parties in incorporating the Plat, when discerned from the Deed as a whole, was to show the boundaries, metes, courses and distances of the property conveyed, not to represent or warranty the width of SCDOT's right-of-way.

### D. Failure to Convey 47.82 Acres

■ We observe Appellants' second contention that Crescent failed to convey 47.82 acres of property directly contravenes well-established law in South Carolina. Appellants essentially claim SCDOT's right-of-way, an easement, reduces the fee simple grant by the total acreage of the easement. In *Douglas v. Med. Investors, Inc.,* 256 S.C. 440, 445, 182 S.E.2d 720, 722 (1971), respondent contended the reservation of an easement in a deed was "repugnant to the fee simple title granted and is, therefore, ineffective." Our Supreme Court noted:

'An easement is a right which one person has to use the land of another for a specific purpose.' *Steele v. Williams,* 204 S.C. 124, 28 S.E.2d 644; and 'gives no title to the land

on which the servitude is imposed,' *Morris v. Townsend*, 253 S.C. 628, 172 S.E.2d 819. An easement is therefore not an estate in lands in the usual sense.'

*Id.* Thus, the court held the easement in that case "in no way cut down the fee simple estate conveyed" and, therefore, "the reservation of the easement following the description in the deed was not repugnant to the fee simple title conveyed in the granting clause." *Id.* at 445–46, 182 S.E.2d at 722.

Reading the Deed as a whole, the granting clause conveyed fee simple title in 47.82 acres of property to Bristol. Therefore, Appellants' second argument is without merit.

### E. The Habendum Clause

■■ Appellants complain the habendum clause is ambiguous. Exception (6) in the habendum clause provides:

[E]asements, covenants, restrictions and conditions of record, and rights-of-way of public and private streets and roads, including, but not limited to, the road shown on the Plat as "old road bed" and *the sixty-six (66) foot wide road right-of-way shown on the Plat* as "SC 188 Keowee School Road (66' R/W)" . . . .

(emphasis added). Appellants claim the emphasized language warrants the width of SCDOT's right-of-way. We agree the emphasized language indicates the parties assumed SCDOT's right of way was sixty-six feet wide. However, all of the language in exception (6), read with the Deed as a whole, clearly and unambiguously placed the liability of error with respect to the Plat on Bristol and subsequent purchasers. Under no possible construction of the habendum clause can Appellants claim they had a right to rely on the Plat and, if the Plat contained an error, seek damages from Crescent.

### F. Limitation on Special Warranty

■■ Appellants argue the special warranty clause in the Deed automatically provides protection against prior encumbrances created by Crescent. To hold otherwise allegedly would render it a quitclaim deed. A special warranty binds the grantor and the grantor's heirs. *See Knotts*, 217 S.C. 99, 102, 59 S.E.2d 850, 851 (1950). However, "[t]he grantor can, and often does, limit [covenants] so as to exclude existing

encumbrances." G.W. Thompson, *Thompson on Real Property* § 82.10(c)(3) (Supp. 2005); *see* § 27–7–20; *see also Steele v. McRaney*, 855 So.2d 1114, 1122–23 (Ala.Civ.App.2003) (finding language grantee would take "subject to" matters a survey or inspection of the property would have uncovered prevented grantee from prevailing in breach of deed covenant claim); *Kamenar R.R. Salvage, Inc. v. Ohio Edison Co.*, 79 Ohio App.3d 685, 607 N.E.2d 1108, 1113 (1992) (holding when a deed provides grantee would take subject to "the state of facts which a personal inspection or accurate survey would disclose," grantee has no claim against grantor for power line easement).

■ Here, exceptions (5) and (6) in the habendum clause of the Deed limit Crescent's special warranty to Bristol. Specifically, the exceptions put Bristol and subsequent purchasers on notice Crescent was not covenanting the Plat, matters which would be uncovered by a current and accurate survey, or public rights-of-way. In this respect, Crescent did not covenant the Property would be free from all encumbrances. Instead, in keeping with section 27–7–20, it limited its covenant to those encumbrances not excepted through the habendum clause. The circuit court did not err in finding exceptions (5) and (6) of the habendum clause limited Crescent's special warranty.

## II. Appellants v. Investors

### A. Policy Coverage

■ Appellants maintain an owners' title insurance policy always provides coverage against a surveying error. We disagree.

■ "Owners' title insurance policies generally exclude coverage for ... matters which would be disclosed by an accurate survey and inspection of the premises." 16 Powell on Real Property § 92.12 (2005); *see also* Stephen A. Spitz, *Real Estate Transactions Cases and Materials* 498 (2d ed. 1998) ("Title commitments or policies often include an exception to those matters which a survey and examination of the ground would reveal."). In *Walker Rogge, Inc. v. Chelsea Title &*

*Guar. Co.*, 116 N.J. 517, 562 A.2d 208, 217 (1989), the Supreme Court of New Jersey explained the rationale behind this rule:

> The purpose of the survey exception is to exclude coverage when the insured fails to provide the insurer with a survey. From a search of relevant public records, a title company cannot ascertain the risks that an accurate survey would disclose. It is for this reason that the title company puts that risk on the insured, who can control it either by obtaining a survey or arranging for the elimination of the survey exception. Thus, the very purpose of a survey exception is to exclude from coverage errors that would be revealed not by a search of public records, but by an accurate survey.

(citation omitted); *see also* 16 Powell on Real Property § 92–12[1] (2005) ("Extended coverage for survey matters is available upon request. The extra coverage is more expensive than standard coverage and may require the purchase of a property survey.").

 Moreover, a legion of case law recognizes title insurance policies using survey exceptions. *See, e.g., Daniel v. Coastal Bonded Title Co.*, 539 So.2d 567, 568 (Fla.Dist.Ct.App. 1989); *Heyd v. Chicago Title Ins. Co.*, 218 Neb. 296, 354 N.W.2d 154, 155 (1984); *U.S. Life Title Ins. Co. v. Hutsell*, 164 Ga.App. 443, 296 S.E.2d 760, 763 (1982); *Mims v. Louisville Title Ins. Co.*, 358 So.2d 1028, 1028 (Ala.1978); *Nautilus, Inc. v. Transam. Title Ins. Co.*, 13 Wash.App. 345, 534 P.2d 1388, 1391 (1975); *Waterview Assocs., Inc. v. Lawyers Title Ins. Corp.*, 30 Mich.App. 687, 186 N.W.2d 803, 803–04 (1971); *Kuhlman v. Title Ins. Co.*, 177 F.Supp. 925, 926 (W.D.Mo. 1959).[5]

---

5. For further edification, we note Appellants do not contend the loss here arose from a surveying error discoverable through the public records. However, the parties do not dispute SCDOT recorded its right-of-way. *See* S.C.Code Ann. § 57–5–550 (2006) (directing all rights-of-way for state highways be filed at SCDOT). Furthermore, we recognize "[t]he survey exception is aimed at excluding from coverage certain risks that can be ascertained by *a physical inspection* of the property." G.W. Thompson, *Thompson on Real Property* § 93.06(c) (2002) (emphasis added). Our Supreme Court, in *I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000), provided:

## B. Title Commitment

 Appellants assert that Investors' failure to put a survey exception in the title commitment rendered the survey exception in the Policy invalid. Appellants did not preserve this issue for our review. The circuit court did not rule on this issue, and Appellants did not seek a ruling on it in their Rule 59, SCRCP, motion. *See Jones v. State Farm Mut. Auto. Ins. Co.*, 364 S.C. 222, 235, 612 S.E.2d 719, 726 (Ct.App. 2005) ("An issue is not preserved where the trial court does not explicitly rule on an argument and the appellant does not make a Rule 59(e) motion to alter or amend the judgment."); *McCall v. State Farm Mut. Auto. Ins. Co.*, 359 S.C. 372, 381, 597 S.E.2d 181, 186 (Ct.App.2004) (holding an issue must be raised to and ruled upon by the trial court to be preserved for appellate review).

 Additionally, Appellants fail to cite any case law for this proposition and make only conclusory arguments in support thereof. Thus, Appellants abandoned this issue on appeal. *See Mulherin–Howell v. Cobb*, 362 S.C. 588, 600, 608 S.E.2d 587, 593–94 (Ct.App.2005) (noting when an appellant fails to cite any supporting authority for his position and makes conclusory arguments, the appellant abandons the issue on appeal). Consequently, we decline to address this issue.

## *CONCLUSION*

We affirm the circuit court's summary judgment order. Crescent did not represent or covenant the width of SCDOT's right-of-way by incorporating the Plat. Moreover, Crescent conveyed 47.82 acres of real property to Bristol. The habendum clause unambiguously places the burden of a survey defect on Bristol and subsequent purchasers, and the circuit

---

An appellate court may not, of course, *reverse* for any reason appearing in the record. The losing party must first try to convince the lower court it has ruled wrongly and then, if that effort fails, convince the appellate court that the lower court erred. This principle underlies the long-established preservation requirement that the losing party generally must both present his issues and arguments to the lower court and obtain a ruling before an appellate court will review those issues and arguments.

(emphasis in original). Accordingly, we refuse to apply a rule of law Appellants failed to point out to this court or the circuit court.

court correctly held exceptions (5) and (6) of the habendum clause limited Crescent's special warranty.

We decline to hold a title insurance policy always insures against surveying errors. Appellants failed to preserve the issue of whether the commitment precluded Investors from including the survey exception to the Policy. Alternatively, Appellants offered only conclusory arguments to support this contention on appeal and, therefore, abandoned that argument.

**AFFIRMED.**

KITTREDGE, J. and SHORT, J., concur.